UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

WESLEY J. MORRIS,

           Plaintiff,

v.                                          Case No. 5:07-cv-30-Oc-10GRJ

MICHAEL J. ASTRUE, Commissioner of
Social Security,

           Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 11) and both parties have filed briefs outlining their respective positions. (Docs.16 & 19.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

### I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on February 20, 2004, alleging an onset date of July 20, 2003. (R. 85-88.) Plaintiff was insured for benefits through the date of the hearing decision on July 26, 2006. (R. 125.) His claim was denied. (R. 37-40.) On July 26, 2006, following a hearing, Administrative Law Judge Robert D. Marcinkowski (the "ALJ") issued a decision unfavorable to Plaintiff. (R. 10-21.) The Appeals Council denied Plaintiff's request for review on November 21, 2006. (R. 4-6.) On January 23, 2007, Plaintiff filed the instant appeal to this Court of the Commissioner's final decision. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11]  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2003) (All further references to 20 C.F.R. will be to the 2003 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the Grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy

---

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] Walker, 826 F.2d at 1003.

that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD EVIDENCE

Plaintiff was born on December 16, 1957 and was forty-five years old at the time he allegedly became disabled and forty-nine on the date of the hearing decision. (R. 12, 85.) He has a high school education and attended college for one year. (R. 134.) Plaintiff's work experience includes working as a machine operator, a maintenance supervisor and a machinist. (R. 154.) Plaintiff alleges that he is unable to work due to back pain from degenerative disc disease/spinal degeneration. (R. 128, 151-52.)

The only issue raised in this appeal concerns the ALJ's determination with regard to Plaintiff's depression and anxiety. The Court will, therefore, focus the discussion of the record on the evidence pertaining to Plaintiff's mental health problems.

On June 21, 2005, Jason L. Burns, a Veteran Administration psychologist, examined Plaintiff for complaints of depression. (R. 292.) Dr. Burns noted that Plaintiff seemed angry and frustrated about his financial situation, his treatment by the VA and his physical limitations. (R. 293-94.) Dr. Burns diagnosed Plaintiff with adjustment

---

[19] Wolfe, 86 F.3d at 1077-78.

[20] Id.

disorder with mixed anxiety and depression and a depressed mood secondary to pain. (R. 294.) Dr. Burns assigned Plaintiff's GAF at 65.[21] (R. 294.)

Dr. Burns recommended that Plaintiff undergo SSRO therapy.[22] Plaintiff told Dr. Burns that he would not take the medication if he had to pay for it. Id. Dr. Burns also recommended that Plaintiff enroll in behavioral pain management to alleviate his stress and frustration. Plaintiff advised that he would enroll in such a program in September and will contact Dr. Burns about the date and the time of the program. (R. 295.)

Progress notes dated June 24, 2005 from the Veteran Administration (the "VA") medical records state that Plaintiff had an unstable mood. (R. 288.) Dr. Burns assessed that Plaintiff's anxiety and depressed mood had worsened due to lack of proper psychiatric evaluation and treatment, and it was noted that Plaintiff was unable to pay for more medication at that time. Id.

During a Psychology Individual Therapy session with Dr. Burns on September 28, 2005, Plaintiff expressed his continued bouts of depression and anxiety. (R. 343-44.) Dr. Burns noted that Plaintiff "displayed a flat affect with the exception of welling up of tears when he discussed his frustration and loss of his previous functioning." Id. Plaintiff told Dr. Burns that he had spent a significant amount of time researching a

---

[21] A GAF score of 61-70 describes the presence of "Some mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30-34 (4th ed. 2000) (DSM-IV).

[22] Selective serotonin reuptake inhibitor, which is a type of psychchopharmaceutical treatment to control most cases of clinical depression. Lippincott, Williams & Wilkins, Stedman's Medical Dictionary (27th ed. 2000).

surgical remedy for his pain so as not to give up hope that he might improve. Dr. Burns recommended an increased dosage of SSRI. Id.

Sometime before September of 2005, Plaintiff began taking Paroxetine, a prescription for depression. (R. 332, 333-34.) During the hearing, Plaintiff testified that he was depressed and frustrated due to his pain but that the medication helped him cope. (R. 411-12.)

## IV.  DISCUSSION

Plaintiff's sole challenge in this case is directed to the ALJ's finding that Plaintiff did not have a severe mental impairment. According to Plaintiff, because a severe mental impairment constitutes a severe non-exertional impairment the ALJ erred by improperly relying upon the Grids instead of using a VE in finding that Plaintiff is not disabled.

Based primarily on the fact that Plaintiff did not list any mental problems on his disability report and the limited progress notes from the VA, the ALJ found that Plaintiff's depression was not a "severe" impairment. (R. 16.) In combination with Plaintiff's physical limitations, the ALJ determined that Plaintiff had the RFC to perform sedentary work. (R. 20.) Based on the RFC finding, the ALJ concluded that Plaintiff could not perform his past relevant work (R. 19) and, therefore, the burden of proof shifted to the Commissioner to establish that the claimant could perform other work that exists in the national economy.[23]

---

[23] Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.[24] This burden may sometimes be met through exclusive reliance on the Grids when each variable on the appropriate grid accurately describes the claimant's situation.[25] Exclusive reliance on the Grids is not appropriate when the claimant is unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that *significantly* limit basic work skills.[26]

Here, the ALJ relied exclusively on the Grids because the ALJ concluded that Plaintiff had the exertional capacity to perform substantially all of the requirements of sedentary work and that Plaintiff's non-exertional mental impairments did not significantly limit his basic work skills. (R. 20.) Pursuant to 20 C.F.R. Part 404, Subpart p, Appendix 2, Rule 201.21 of the Medical-Vocational Guidelines, the ALJ found that Plaintiff's profile as a younger individual able to perform essentially a full range of sedentary work guided the ALJ to a finding of not disabled.[27]

There is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's mental impairments did not significantly limit Plaintiff's ability to handle the mental demands of unskilled work during the relevant time period . Notably, Plaintiff did

---

[24] *See* Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).

[25] *See* Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[26] Specifically, the Eleventh Circuit has held that "non-exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at a designated level." Murray v. Heckler, 737 F.2d 934, 935 (11th Cir. 1984).

[27] "Age: younger individual age 45-49; Education: high school graduate or more: Previous Work Experience: skilled or semiskilled-skills not transferable; Decision: not disabled." 20 C.F.R. Part 404, Subpt. P, App. 2, T.1. (2001).

not even list a mental impairment as a basis for disability on his disability report and received only limited treatment for his mental problems in the time period from June of 2005 through September of 2005.

The ALJ properly took into account that Plaintiff was evaluated by a psychologist, who assigned Plaintiff a GAF score of 65, which, according to the DSM-IV only denotes mild symptoms and limitations. (R. 16.)

The ALJ also found significant that in the limited psychological treatment received by Plaintiff that it was noted an increased dosage of anti-depressant medications and stress management classes would likely lesson Plaintiff's symptoms of depression and anxiety.  Based upon, the limited treatment received by the Plaintiff and consistent with Plaintiff's GAF score the ALJ concluded that Plaintiff's mild mental impairments "do not interfere with his ability to understand, carry out, and remember simple instructions, use judgment, respond appropriately to supervisors, co-workers, and usual work situations or deal with changes in a routine work setting," a finding that is consistent with the basic mental demands of unskilled work.[28]

Additionally, Plaintiff's own testimony also supports the ALJ's finding that Plaintiff did not have severe mental limitations. Plaintiff testified that the reason he went to see a psychiatrist was because his medical doctor recommended that he do so to deal with his pain.(R. 411.) Plaintiff further testified that the medication which he was prescribed helps him with his mood and his anxiety. (R. 411-12.)

---

[28] "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.

In sum, the ALJ adequately addressed Plaintiff's mental limitations and the ALJ's conclusion that Plaintiff did not have a severe mental limitation is fully supported by the evidence of record. Accordingly, the ALJ did not err in applying the Grids, instead of using a VE, because Plaintiff's mental impairments did not erode the work base for skilled, semi-skilled or unskilled sedentary work.

## V. CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 19, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel